MR. HOISER. May it please the Court, my name is Peter Hoiser. I represent Construction Equipment Company. This case has a lot of background. The case has been before the Federal Circuit previously, but that's all set forth in the materials. What I'd like to do is get right to the claims. And I think two of the claims are fairly typical of     Claims 15 and 16. Claims 17 and 18. Claims 19 and 20. Claims 5 and 8. They recite the important features of the invention. They also most importantly distinguish the invention from the prior art. Claims 5 and 8 both talk about an upwardly extending material transport conveyor. And the material that's being transported is material that's being sorted by size. These pieces of equipment are designed to be used at quarries, landfills, any place the material, bulk material, has to be sorted by size. The material passes up an upwardly moving material transport conveyor, and then goes on to a downwardly inclined screening assembly. Now in Claims 5 and 8, this screening assembly has two screens. A top screen that's very coarse, a bottom screen that's a little more fine. Let me just interrupt you before your time runs out. This is a very crowded field. What are exactly the points of novelty that you're drawing? Okay, thank you for asking that question. You can say it's a crowded field, and it is, but if you look at the prior art that Power Screen and the Patent Office has been able to come up with, it's not very similar your honor. If you look at it, they searched the world over for a period of 10 to 15 years looking for prior art. The best that they found apparently is this Mechelm 5 or Mechelm 3 unit. You'll see it does have an upwardly extending material transport conveyor. In this unit you'll see the hopper is not over the upwardly extending portion, but rather it has a flat conveyor here, and under Claim 5, properly interpreted according to the board, it said that the hopper has to be positioned over the upwardly inclining material transport conveyor. Well, most of your arguments in your brief had to do with anticipation, and you were citing a whole lot of cases and making a whole lot of arguments that had to do with whether or not each one of these particular prior arts had every single element, but that's not the analysis under obviousness, right? You're right, your honor, it's not, and I thought I'd more focus the argument on obviousness here. We look at Claims 5 and 8, and what I'd like to do is point out what's missing in Mechelm, how they make it up with the other prior art, how they attempt to do that. So we've got the material transport conveyor takes it to a screen, the screen has two screens in it, discharges material off the end. What happens to the material we know, the Mechelm literature talks about there being chutes or conveyors, but we don't really know what's proposed. What we do know is that it doesn't teach laterally extending adjustable conveyors, and that's what is claimed in Claims 5 and 8. It also recites Claims 5 and 8 recite an underscreen conveyor that extends forwardly, so the importance of that is that you can then have the smallest material that falls through the second screen is carried forwardly and off to the side so that we've got three distinct piles that are spaced widely from each other. The smallest material on this side, the material that passes through the first screen on this side, and the largest material that's on the end. But like Judge O'Malley, I didn't think that you were contesting that every single one of those was found in some piece of prior art. Every single thing you're talking about here is in some prior art, and therefore your argument goes to whether it's the motivation to combine or the ease with which you can combine those elements. Am I misreading your argument? No, I think, Your Honor, you're right, but my basic point is that when you look to where did they find in the prior art that there was an underscreen conveyor, the only place they found it was in trommels, large trommels that are very different pieces of equipment. They searched the world over, could not find any underscreen conveyor in a vibratory screening equipment. So they get this trommel conveyor, trommel sorter, that has an upwardly inclined material transport conveyor and a very large eight to ten foot diameter trommel screen. It's just got one screen because trommels can only have one screen. It rotates very slowly. What happens to the material? It passes the large material that doesn't pass through the screen, passes outwardly off the rear end. The material that does pass through the screen, passes down. Now they found some prior art that included underscreen conveyors, but it's found in a trommel screen. A trommel screen, you have to do something with the material otherwise it's just going to be deposited underneath the unit. But it's a very different piece of equipment. They took the underscreen conveyor from the trommel screens and said, well, it's obvious to combine it with a vibratory screening system, which is very different in construction. You can't have two screens in a trommel screen. That's the beauty and the elegance of this invention. The contention isn't that it would have been impossible to combine them. No. So what is it that's the problem in terms of taking all of these pieces of prior art and putting them together in combination? The combination is a perfect example of hindsight reconstruction, Your Honor. It's they've been able to pick and choose among very different pieces of equipment. Well, they're all in the same field. I mean, that's one of the things we've picked up in cases if you're talking about mattresses versus vitamins, but this is all in the same field, right? So there's no argument there. Correct, Your Honor. I'm not saying it's not analogous to prior art. So I guess you have any cases that establish that there was a problem here in the combining these references? I mean, I think you say it wouldn't have been easy, right? It wouldn't have been obvious. Let me understand the standard you're setting out for obviousness here. When you say KSR, you take the language that they have about finite solutions or the precise language, identified, finite number of identified predictable solutions, and then you try to argue that if you don't have that, if you don't have that, it can't be obvious. But that's not what that language was about. It wasn't defining an obviousness standard. They're saying that when there are a finite number of predictable solutions, then it's more likely to be obvious, but they didn't say that was the whole standard, did they? I think you're right. They did not. If we said that, that was not entirely accurate. But really, we get down to the basic question of obviousness here, Your Honor, and it's just you've got two pieces of equipment in the same field, very different pieces of equipment, and you're taking teachings from one and applying it to another piece of equipment that looks, operates, acts entirely differently. And it's not surprising to us that the patent office granted us this patent, that the Federal Circuit affirmed a determination, a summary judgment on not invalid and infringed in the decision ten years ago. It's just that, because again, the prior art construction is so different, we think the ultimate issue of obviousness to be cited de novo by the Court is clear that one of ordinary skill in the art wouldn't have thought to make these combinations. Who is one of ordinary skill in the art in this? How do you define that? You don't define it in your brief. We don't. At trial it was defined as a mechanical engineer with a couple of years of design experience and neither party disagreed with that. Okay. That was a stipulation or that was the judge's definition? I believe that was a stipulation at trial. At the original trial? Yes. And did the Board use the same definition? I believe so, Your Honor. Yes, so we went to trial on this issue, we went to the trial on obviousness, excuse me, prior to trial, defendant Powerscreen, the same party that filed the reexamination, cited to Trommel screens. Royer was a Trommel screen. And we won a summary judgment saying that the patent claims were not obvious. And that's based upon Royer and based upon prior art vibratory screening equipment. And that case came up before this Court and it was affirmed. But we didn't have the advantage of all this other prior art that the Board cited to, did we? No. You didn't have the advantage of Meckown 5 and what does Meckown 5 show? It simply shows an upwardly extending transport conveyor and a double screen. That was, actually, Erickson was before the Court previously and this does have an upwardly inclined conveyor and a screen on it. To pursue this aspect of the prior trial, I don't see that you're taking the position that this case was litigated in the District Court, fully litigated, decided, the issues of validity were resolved and that that should have ended the challenge of validity of this patent. You're not arguing that position? I looked at the case law, Your Honor, and it appeared that there was a public interest that anyone can file a reexamination request. There's a public interest to overcome So the standard rules of Estoppo? Well, what I planned to do, Your Honor, if in fact we're not successful here, we would argue that to the District Court if PowerScreen attempted to lift the injunction based upon a finding of invalidity on reexamination, but we didn't feel it was appropriate to argue that to the Patent Office. So your principle would be that you can't put into reexam a patent that's been subject to prior litigation? No, the principle would be that somebody that's previously litigated a patent can't take advantage of a subsequent ruling in the Patent Office that was initiated by them so that the public would the patent would be invalid for other purposes but for this defendant they'd already litigated it. And that's a position that we'll have to take at the District Court below if the court affirms the Patent Office determination. Is there any case that's ever resolved? I'm not aware of any cases that have handled that, Your Honor. So I mean I could take more time, we could talk more about the history of the case, but I think the court is familiar with it. Are there other questions the court might have? Because really I just come down to the ultimate decision of obviousness and I think the equipment is too different to transfer teachings from one to the other. All right, well let's hear from the other side and you'll have full rebuttal. Thank you. Ms. Lynch? Good morning, Your Honors. May it please the court. Vehicles with screen assemblies that separate differently sized materials and convey them to different places are well known in the art and all seven pieces of the prior art do that. And I'm happy to answer any questions the court has about any of the rejections, but I'd like to direct your attention to two rejections that take care of all of the claims. And those are discussed at pages 35 through 38 of the director's brief. And they are the rejection that claims 1, 2, and 5 through 8 would have been obvious over R.S.T.I., Moklin, and Erickson, and the remaining dependent claims would be obvious over those same three references plus Chayette. Can you address the Estoppel issue though first? This court made a biting determination that the patent was valid. The power screen had the ability and the interest to introduce any relevant prior art and presumably introduced everything at that point that it thought was appropriate. Can they go back and ask the board to essentially overturn a decision of this court? Your Honor, they didn't brief the Estoppel issue, so I'm not particularly prepared to respond to that, but I can tell you that the issues were different before the court the first time, and the district court opinion is actually in the appendix. So I can point you to what the district court decided, and what it decided was that claim 1 wasn't anticipated by Royer, claim 2 wasn't anticipated by Erickson, and claims 5, 7, and 8 weren't obvious over the combination of Erickson and Royer. So none of those were before except the PTO. Are you saying that because there is an obligation to inform the office when there has been litigation and what the results are, and so you're asking us to assume that the office studied the prior decision and decided that the issues were  that the office ignores the judicial decision when it's requested to re-exam and with full authority to reach a contrary result? The office did consider the district court opinion because the examiner actually referred to it several times in her rejections and in the examiner's answer. Consider it in what way? Consider it not the examiner didn't feel bound by the district court decision, did she? What the examiner said particularly one point that I remember is the reason that the combination of Erickson and Royer was not found to support an obvious misrejection was that Erickson doesn't send the course's material to the opposite side. Erickson actually has a screen that comes back towards the front end and so what the examiner said when she first looked at this is she said well there were other pieces of prior art that did channel it to the opposite side unlike Erickson and unlike what the district court said about Erickson. I hear you saying that the office has full authority to discard the district court's opinion if the examiner thinks that there is that there were references that weren't mentioned by the district court for example. I don't think it's to disregard the court's opinion I think what the office they were given a re-exam request by a third party requester that person put forward 14 different combinations those what the office did was decide that 5 of those combinations did present a substantial new question of patentability and none of them were ones that the district court had decided. In other words you concluded I mean whatever the law is in this regard there was no inconsistency between what the district court did and what the examiner said. We don't know if those 14 combinations might or might not have been presented to the district court and deemed not to be dispositive. I'm really trying to understand whether the position of the office is that if they think they might find an additional argument they can ignore the judicial decision which found the patent valid that that is that that subject to re-litigation in the office is that the position of the office? Again your honor that wasn't at issue here because what the court found was that there were 5 rejections that were not considered by the district court. I don't know if they were considered they were not referred to in the decision which may or may not mean that they were presented unless one goes back into the record to find out. I'm sorry your honor could you repeat the end of that I interrupted you I apologize. Pardon me? Could you repeat that I interrupted you I apologize. Well I'm sorry I don't understand your question. I didn't hear the end of your question because I interrupted you and I apologize. I'm trying to understand the relationships here they come before us very rarely and it's rare indeed when a validity has either been fully litigated or had the opportunity to be fully litigated was decided by the district court was brought to the federal circuit the validity was sustained on the arguments that were presented the entities are the same the defendant in the litigation is the same entity that requested re-examination and when the examiner in the office then responds to a request that is really what I'm trying to understand is the case over when there's a final decision in this court or is the patent always open for review and re-examination if the requester can come up with some references that were not referred to by the district court and there was a summary affirmance from this court so we realized that there was not another opinion but there was accepting that there was full opportunity for challenge to the validity and there was a full challenge to validity in the district court it was decided it was affirmed now we start again with references whose nature in the district court we don't know and as to what is available in fact are accused infringers as in this case entitled after they lose in the district court and in the federal circuit to go back and seek re-examination we've seen some such instances and we've seen argument as to when litigation should end we appreciate that the patentee has a strong sense of the public interest and is not objecting to the patent being on the line again there's also an interest in finality and there's probably an interest in knowing what is or isn't available in terms of finality on the part of patentees we realize this patent is expiring expired? Is it expired? I think it has 10 months left I think your honor it was a third party requester can come to the patent office and say that they put forward what they think are substantial new grounds of patentability and it was proper for the patent office to consider those and go forward with the rejections and in this case nobody laid challenge to the board's authority to act that's correct your honor it was never an issue so if you don't have any further questions about any of the specific rejections there is just one thing I'd like to bring to the court's attention I apologize there is a mistake in the director's brief on page 35 and that should say that last combination of the Moklin brochures and Royer is only claims 1, 2, 7, and 8 which tell me again so the rejections that you say were not issues before the district court are what? that were not before the district court none of these rejections were before the district court they had an anticipation of Royer, an anticipation of Erickson, and a combination of Erickson and Royer so none of the rejections that the district court ruled on are rejections that went forward in the patent office but the office's finding was not based on anticipation is that right? that's correct but the references were different as well well some of our some of the board's rejections included Royer or Erickson but not in the combination that the district court looked at it okay thank you thank you Mr. Hardison yes as I said I had planned to bring this up for the district court if we were unsuccessful here but I think perhaps we should address the issue now I think it's a perfect example of issue preclusion where validity was fully litigated at trial we went through trial so power screen should be bound by the determination at trial and on appeal that the patent was not invalid it was fully litigated so it's issue preclusion they're bound by it but is it power screen that we're talking about in this case? I assume this is why you were assuming that you would have to go to the district court because in this case it's really the board that's the party power screen may have initiated it are you saying the board should have said that because the initiator is someone who should be a stop that the board shouldn't have considered it? that's right your honor but you didn't argue that I did not argue that just so we know exactly what was in the district court case you did not have Douglas Cheyette Oakland or RSTI before the district court that's correct your honor we had Erickson and Royer only Erickson and Royer and some other prior art your honor but those other that the board relied upon I know they did rely upon Erickson and Royer but to the extent that there are those other four pieces of prior art you concede that they were not at the district court that's correct but if you compare Royer to RSTI you'll see that they're in all material respects they're identical in fact the court may note that in the appendix at pages 1116 to 1118 it is supposed to show a representation of Royer but that's not Royer somehow a mistake was made when the appendix was put together and that's not the correct prior art however there is an accurate representation of Royer in the patent office's brief on one of the back pages where they refer to the fact that it's on the prior page so I don't want the court to refer to appendix 1116 to 1118 I just realize that that's wrong. Royer is very similar to RSTI they're both trommel conveyors they both have upperly extending material transport conveyors they both have underscreen conveyors in all material respects it's the same as RSTI so you're saying that to the extent that the board relies upon RSTI when the district court rejected Royer that that's an inconsistency with the district court decision? That's correct your honor it is specifically as to obviousness on claim 5 which is a claim that I've been talking about today. Okay. Any other questions? Anything else for Mr. Horizer? Any more questions? Okay thank you the case is taken under submission thank you Mr. Horizer and Ms. Lynch.